12/7/2022 5:08 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-22-001796
Adrian Rodriguez

CAUSE D-1-GN-22-001796

| | | |
|---|---|---|
| DRAGAN BOROJA, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | TRAVIS COUNTY, TEXAS |
| ALEXANDER LE ROUX, JASON | § | |
| BALLARD, EVAN LOOMIS, ICON | § | |
| TECHNOLOGY, INC. | § | |
| | § | |
| *Defendants*. | § | 419th JUDICIAL DISTRICT |

## PLAINTIFF'S 3rd AMENDED ORIGINAL PETITION

1.      Plaintiff Dragan Boroja ("Plaintiff" or "Boroja") brings this 3rd Amended Original Petition against Defendants Alexander Le Roux ("Le Roux"), Jason Ballard ("Ballard"), Evan Loomis ("Loomis"), and ICON Technology, Inc. f/k/a ICON, LLC ("ICON") (collectively "Defendants"), and alleges the following:

## DOCUMENT PRESERVATION NOTICE

2.      **Boroja demands that Defendants preserve all documents, tangible things and electronically stored information potentially relevant to the issues in this cause. Boroja notifies Defendants and all persons acting in concert with them, to preserve all electronically stored information, copies and backup, as defined by Rule 196.4 of the Texas Rules of Civil Procedure, along with any paper files that Defendants and all persons acting in concert with them maintain, relevant to this dispute, including but not limited to all communications between them. For this purpose, reference to any entity includes agents, successors, assigns, attorneys, accountants, employees, partners, or other persons occupying similar positions or performing similar functions.**

## DISCOVERY CONTROL PLAN

3.     Pursuant to Tex. R. Civ. P. 190.3, Plaintiff designates this case as appropriate for Level 3 discovery.

## RULE 47 STATEMENT OF RELIEF SOUGHT

4.     Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff seeks monetary relief over $1,000,000 and all other relief to which they may be entitled.

## PARTIES, JURISDICTION, AND VENUE

5.     Plaintiff Dragan Boroja is an individual who resides in Leonard, Michigan.

6.     Defendant Alexander Le Roux is an individual who resides in Travis County, Texas.  Le Roux has previously appeared in this matter and is represented by Sanders Bajwa, LLP.

7.     Defendant Jason Ballard is an individual who resides in Travis County, Texas. Ballard has previously appeared in this matter and is represented by Wittliff Cutter, PLLC.

8.     Defendant Evan Loomis is an individual who resides in Travis County, Texas. Loomis has previously appeared in this matter and is represented by Wittliff Cutter, PLLC.

9.     Defendant ICON Technology, Inc. f/k/a ICON, LLC, is a Delaware corporation that is registered in Texas as a foreign for-profit corporation with a principal office located at 444 E. St. Elmo Road, STE. B, Austin, Texas 78745.  ICON has previously appeared in this matter and is represented by Wittliff Cutter, PLLC.

10.     This court has personal jurisdiction over Le Roux, Ballard, and Loomis because they are residents in the state of Texas.  This court has personal jurisdiction over ICON because its principal office is in Texas and it conducts business in the State of Texas.  This Court has subject matter jurisdiction because the amount in controversy is within the jurisdictional limits of this Court, and state courts have concurrent jurisdiction to consider civil claims arising under RICO.

Plaintiff's 3rd Amended Original Petition                2

*Tafflin v. Levitt*, 493 U.S. 455, 467 (1990). Venue is proper in Travis County pursuant to Texas Civil Practice and Remedies Code §15.002.

## SUMMARY OF THE FACTS

11.     Plaintiff Dragan Boroja is a sales manager for a microchip company, and a member of Modeco Development, LLC ("Modeco"), a Michigan-based architectural firm that constructs homes and commercial buildings from shipping containers. In early 2016 Boroja read about Defendant Le Roux's work with 3D printers and his concept to use the technology to build homes using a cement mix and architectural programming with a 3D printer. Boroja contacted Le Roux, and agreed to invest in Le Roux's company ALR Technologies, LLC ("ALR") in exchange for an ownership interest in the company.

12.     Over the ensuing 12 months, Boroja contributed capital, knowledge, and ideas to ALR's venture, and Le Roux continued to develop the Vesta 3D concrete printer that he had designed for "printing" buildings, and that ALR owned. ALR also granted a limited license for use of the Vesta Printer technology – referred to as "Technical Information" in the License Agreement – to Modeco.

13.     In early 2017, Le Roux met with Evan Loomis and Jason Ballard and began talking with them about collaborating on 3D house printing technology. The Loomis and Ballard connection should have resulted in a collaboration between ALR, Loomis and Ballard (Loomis and Ballard at the time were operating an eco-centric building supply company called Treehouse). Instead, Le Roux with the help of Loomis and Ballard, conceived of and enacted a scheme to transfer ALR's Valuable Assets to another company that Loomis and Ballard owned called ICON, and claim the opportunity for himself rather than share it with Boroja through their mutual interest in ALR. "ALR's Valuable Assets" is defined throughout this Petition as ALR's "intellectual

Plaintiff's 3rd Amended Original Petition          3

property rights, designs, etc." that Loomis discussed buying in a February 23, 2017 email to Le Roux,[1] and the Vesta Printer Technical Information that is defined by the March 1, 2016 License Agreement.[2]

14.     Le Roux never offered to buy out Boroja or even give him the opportunity to join in the collaboration, which was Boroja's right as a partial owner of ALR's Valuable Assets. Instead, Le Roux secretly transferred ALR's Valuable Assets to Defendants, and concealed his malfeasance by making materially false statements to Boroja.  The scheme was designed to, and did, completely conceal from Boroja the fraudulent transfer of ALR's Valuable Assets and the conspiracy among the Defendants to co-opt them without properly compensating Boroja or allowing him to participate in the business opportunity.

15.     The details of the scheme and its participants are further described below.

## FACTUAL BACKGROUND

**A. In 2016, Boroja purchased a 20% interest in ALR, LLC and obtained a license to the Vesta Printer Technical Information from Le Roux.**

16.     On January 13, 2016 Le Roux formed ALR, a Texas LLC.  Per ALR's certificate of formation, ALR was a member-managed limited liability company. Le Roux was the sole member of ALR until March 3, 2016.

17.     On **March 3, 2016**, Boroja purchased a twenty percent (20%) interest in ALR from Le Roux for eight thousand dollars ($8,000).  When he purchased his membership interest in ALR, Boroja also caused Modeco to pay ALR an additional eight thousand dollars ($8,000) to become the exclusive licensee of the Vesta Printer and its Technical Information for the eastern half of the United States.

---

[1] Le Roux 000659

[2] Le Roux 000215

Plaintiff's 3rd Amended Original Petition                4

18.    In the License Agreement,[3] Le Roux represented that ALR owned the entire right, title, and interest in and to certain inventions pertaining to a 3D Concrete Printer (the "Vesta Printer") used to design and build structures by pouring concrete as designed and imputed (*stet*) into the Concrete Printer's system to build residential, industrial, and commercial structures.

1. Licensor is the owner of the entire right, title, and interest in and to certain inventions pertaining to **a 3D Concrete Printer (Vesta Printer) which would be used to design and build structures by pouring concrete as designed and imputed into the Concrete Printer's system,** and forming the subject matter of the Licensed Products and Technical Information, as defined in Article I, for use with **building residential, industrial, and commercial structures.**

Le Roux further represented on ALR's behalf that ALR's "Technical Information" included the following:

1.01 "Technical Information" means unpublished research and development information, unpatented inventions, know-how, trade secrets, and technical data in the possession of Licensor on the Effective Date of this Agreement that is needed to produce Licensed Products and that Licensor has the right to provide to Licensee.

Le Roux signed the License Agreement as the Owner/Member/Partner of ALR:

The Parties have executed this Agreement by their authorized representatives on the Effective Date of this Agreement.

ALR Technologies LLC/ Licensor
Alexander Le Roux
Its: Owner/Member/Partner

Modeco Development LLC
Dragan Boroja
It's: Owner/Partner

---

[3] Le Roux 000215

19.     Articles written in June 2016 about Le Roux and the Vesta Printer state that Boroja's funding was partially used to build an eight-by-five-by-seven-foot concrete "Tiny House."[4]



20.     Le Roux and Boroja had plans to debut an upgraded version of the Vesta Printer (version 3) later that year to 3D print part of a completely up-to-code home in Michigan, as well as to raise funds from institutional investors.

**B. In 2017, Defendants came up with a scheme to abscond with ALR's Valuable Assets while concealing the entire thing from Boroja.**

21.     In January 2017, Le Roux began to have discussions with Jason Ballard and Evan Loomis, the co-founders of an Austin, Texas-based green home improvement store called Treehouse. On **January 13, 2017**, Le Roux texted Boroja an update and stated that, though the meeting was originally to facilitate meetings with potential investors, the Treehouse guys began talking about potentially merging Treehouse and ALR, bringing Treehouse's money and

---

[4] "Alex Le Roux 3D prints livable concrete structure 'Tiny House' in just 24 hours," June 20, 2016, *www. 3ders.org*; "A Tiny House Was Built in 24 Hours, Thanks to a 3D Concrete Printer," *https://futurism.com/tiny-house-built-in-24-hours-using-3d-concrete-printer*

knowledge of growing and scaling business to the table, and relocating ALR's operations from Houston to Austin.[5]

22.     The initial discussion led to an in-person meeting on **February 2, 2017**, between Treehouse's Ballard and Loomis and ALR's Le Roux and Boroja.  Though Loomis and Ballard had already formed another company, called ICON, neither they nor Le Roux ever mentioned ICON to Boroja.  Based on Le Roux's representations, Boroja knew Loomis and Ballard as "the Treehouse guys," and that is how Le Roux referred to them throughout the so-called "discussions" about the potential collaboration.[6]  "ICON" refers to defendant ICON, a company that Loomis had registered as a Texas limited liability company on March 18, 2016, and in which he was the managing member.  ICON was later converted to a Delaware corporation on August 9, 2018, and renamed ICON Technology, Inc.

23.     On **February 17, 2017** Le Roux had a two-hour meeting with Loomis and Ballard in Austin, Texas to finalize "the plan."[7]  **Defendants did not invite Boroja to the meeting or inform him what was discussed.[8]**  Documents produced by Le Roux in discovery now reveal that "the Plan" was to transfer ALR's Valuable Assets to ICON so that ICON could use them to develop a 3D concrete printer to build residential, industrial, and commercial structures – the exact same business model that ALR was engaged in – and to fraudulently conceal their intentions and activities from Boroja.

---

[5] Le Roux 000608

[6] For example, Le Roux emailed Boroja on April 7, 2017 purporting to have "put a bug in the ear of the Treehouse guys . . ." about the value of a possible buyout of Boroja's interest in ALR. Le Roux 000568. Le Roux avoided mentioning ICON to Boroja even as late as July 13, 2017, when he sent an email to Boroja stating that he "[m]ight try to sell company assets to Treehouse guys you had met." Le Roux 000570.

[7] Le Roux 000655-656

[8] Deliberate Non-Disclosure/Concealment #1

24.    **On February 19, 2017**, only two (2) days after the meeting in Austin, Le Roux sent an email identifying Loomis as his "co-founder."[9]  **Le Roux copied Loomis on this email but did not copy Boroja.**[10]

> On Feb 19, 2017, at 8:18 PM, Alexander Le Roux <aleroux2015@gmail.com> wrote:
>
> Hi Tim-
>
> It was great talking last week and we're looking forward to hearing back on a quote for a custom mix from CTL.
>
> Two more things:
>
> 1) Would be possible to also receive a quote for an "off the shelf" mix that could work for our purposes (i.e. a mix that mostly fits the constraints outlined in our talk but is already developed)?
>
> 2) CC'd on this email is my co-founder, Evan Loomis, as he will be part of this discussion moving forward.
>
> Best regards,
>
> Alexander Le Roux
> Founder and Engineer, Vesta Printer
> www.VestaPrinter.com
> aleroux2015@gmail.com
> +1 713-894-5484
> Skype: alexleroux2015

Defendants concealed this email from Boroja because Boroja would have naturally questioned Le Roux what 3D concrete printing venture he and Loomis were now "co-founders" of, and this revelation would have completely disrupted Defendants' scheme.

25.    **Instead, on February 21, 2017, Boroja is told a lie – the first of many – as part of Defendants' scheme.**  In discussions concerning a potential buyout of Boroja from ALR, Loomis had purportedly balked at Boroja's valuation of his ALR interest, and claimed it was "**prohibitive for us [Loomis and Ballard] moving forward with Alex.**"[11]  This statement was

---

[9] Le Roux 000664-668

[10] Deliberate Non-Disclosure/Concealment #2

[11] Le Roux 000657-658 (emphasis added)

flatly untrue, because Loomis and Ballard had already begun working with Le Roux as a "co-founder" of ICON.

26.    In a **February 23, 2017** email, it is clear that Defendants did indeed plan "move forward."  Loomis told Le Roux,

> There are a couple ways to do a clean transaction here - - one is for ICON **to buy the whole company and the other is to do an asset purchase agreement and "buy" all the intellectual property, rights, designs, etc.** Both should work...but I'd need to see the agreement to know which one will be better.[12]

27.    Loomis's email demonstrates that ALR had assets that he and Ballard, who was copied on the email, were interested in acquiring from ALR.  So Loomis asked Le Roux for copies of the legal agreements between Le Roux and Boroja.  **Defendants did not copy Boroja on this email exchange.[13]**  Le Roux then emailed Boroja between February 24 and 25 to question Boroja about how their deal was structured.

28.    **To avoid suspicion, Le Roux downplayed the request** by telling the second lie to Boroja, claiming that he "[w]as just reviewing the old agreements and was curious as to how we had actually structured [ALR] ... didn't mean to stir the pot...."[14]

29.    But as early as **February 28, 2017,** Le Roux was already wearing two hats – one as ALR and one as ICON.  For example, on this day Le Roux emailed a Google Docs link to "Team ICON" member Nathan Wang that shared **"a few images of the first pass at the 'next gen' printer design."**  On that email, Le Roux's signature block identifies him as "Founder and Engineer, Vesta Printer."[15] In short, as a managing member of *ALR*, Le Roux was sending printer

---

[12] Le Roux 000659 (emphasis added).

[13] Deliberate Non-Disclosure/Concealment #3

[14] Le Roux 000565

[15] Le Roux 000660-663

design information to *ICON*. **This email and Le Roux's activities were done without Boroja's knowledge or consent.[16]**

30.    Then on **March 3, 2017**, Le Roux sent an email to Raissa Ferron (Director - Laboratory for Infrastructure Materials Engineering & Associate Professor at the University of Texas at Austin Cockrell School of Engineering) that announced,

> Wanted to give you another update on my progress regarding 3D printing with concrete: **I am joining the founding team at ICON** and relocating to Austin. **Evan Loomis (CC'd on this email) and I are now co-founders and working closely together**.

In the same email thread, Loomis tells Ferron,

> Raissa, **we would like to setup a Vesta Printer outdoors at your facility as well**. More on that soon.

Loomis's email footer identifies and affirms him as an **ICON Co-founder**.[17]  Yet he is planning to set up a *Vesta* printer, acting as if it were his or ICON's to give her.

31.    Ferron's response to Loomis and Le Roux confirms that the Vesta Printer had been fully co-opted for ICON's use: "on my to do list this week was to reach out to you **so we can come up with a timeline for the printer transfer** . . . ."[18]  **Boroja – still a managing member of ALR – did not consent to this use of ALR's Valuable Assets, nor could he, because none of this, including the email exchange, was ever disclosed to him by Defendants.[19]**  Ferron (as well as Wang) shortly thereafter became a member of "Team ICON," as noted in ICON's request for proposal to engineer "its" printer.[20]

---

[16] Deliberate Non-Disclosure/Concealment #4

[17] Le Roux 000442-443 (emphasis added)

[18] Le Roux 000442

[19] Deliberate Non-Disclosure/Concealment #5

[20] Pump_Studios0161207

**Team**



| Evan Loomis | Jason Ballard | Alex Le Roux | Nathan Wang | Raissa Ferron |
|---|---|---|---|---|
| Saturn Five TreeHouse Wedgwood Circle *Kauffman Fellow Texas A&M* | TreeHouse ACRT, Inc Steve Hatland Homes *GLG Fellow Texas A&M* | Vesta Printer Baker Hughes *Baylor Mechanical Engineering* | M3 Insight MIT *Mechanical Engineering* | UT Austin Civil Eng. (Cementitious Materials) *Northwestern Civil Eng.* |

32.  **What Le Roux *did* tell Boroja on or around this time period is a third lie.**  In an **April 7, 2017** email, Le Roux wrote that he supposedly "put a bug in the ear of the Treehouse guys. They should start soon on getting back to you."  Of course, this was not true because per their scheme, Defendants had already co-opted ALR's Valuable Assets for themselves without fairly compensating Boroja.

33.  Indeed, it is telling that in the same email Le Roux asked for signed copies of the company agreements.[21]  One of the proposed agreements would have curbed Boroja's ability to prevent Le Roux from unilaterally dissolving ALR or unilaterally transferring ALR's Valuable Assets to a third party.  Boroja did not sign these agreements.

34.  While Le Roux was deceiving Boroja and pretending to act in his interests as well as the interests of ALR, Le Roux and his co-conspirators were secretly developing ICON's Vulcan printer using ALR's Valuable Assets and Vesta Printer technology.  In an **April 12, 2017** email to Tom Bielecki, the former CEO and founder of PrintToPeer, Le Roux said,

---

[21] Le Roux 000568

> **our company** is beginning to scale and we've combined forces with some experienced entrepreneurs out of Austin [Ballard and Loomis]. **We now have a new pitch deck and will be unveiling some new tech** within the next year (pitch deck attached).[22]

Of course, Le Roux was still a managing member of ALR when he sent this email. So his reference to "our company" could not have meant ALR because ALR had not "combined forces" with anyone, and certainly not Ballard and Loomis, nor with the knowledge and consent of Boroja, which would have been required. **Le Roux copied Loomis and Ballard on this email, but he did not copy Boroja or make him aware of the ICON Pitch Deck or its contents.[23]**

35.    Prominently displayed in the ICON "pitch deck" is a picture of the **Vesta Printer** which is identified as one of *ICON's* early 3D printers and "Successful Demonstration Of Technology And Market Viability."



36.    Then on **June 12, 2017**, Le Roux sent an email to Edouard Baaklin, CEO of 3dvincicreations.com and stated, "We are now relocated to Austin, Texas - we will be moving into

---

[22] Le Roux 000790-812 (emphasis added)

[23] Deliberate Non-Disclosure/Concealment #6

a warehouse space soon." But since Le Roux was still a member of ALR, and ALR had not relocated at all, Le Roux was again referring to his illicit activities with ICON at the expense of ALR and Boroja.[24] **Le Roux did not copy Boroja on this email or make him aware of its contents or the discussions with Baaklin.[25]**

37.     **On or around July 13, 2017, Le Roux tells a fourth lie to Boroja**   Le Roux sent an email to Boroja that was glumly hopeless sounding, stating that Le Roux had "[b]een working side gigs here and there" to refund money owed to the University of Michigan, and had been "trying to raise money, though struggling to do so." Then he threw in that he "[m]ight try to sell **company assets** to Treehouse guys you had met."[26] But of course, the "Treehouse guys" were the ICON guys, and the assets had already been transferred.

38.     In furtherance of this deception, on **July 18, 2017,** Le Roux asked Loomis for his thoughts on an email he had drafted and wanted to send to Boroja regarding selling his interest to the "Treehouse" guys or closing ALR down. The email proposes telling Boroja, "We have not raised money and we do not have any new sales. **However, there is interest from the co-founders of Treehouse to purchase your stake and rights to ALR Technologies** . . . ."[27]

39.     Nowhere in this draft email does Le Roux propose to disclose to Boroja that he was already a co-founder of ICON, that he had already transferred ALR's Valuable Assets to ICON, and that he was engaged in raising funds for ICON and its "Vulcan" printer (in reality, what was supposed to be the Vesta3 Printer).[28] **For obvious reasons, Le Roux did not copy Boroja on this**

---

[24] Le Roux 000827-829

[25] Deliberate Non-Disclosure/Concealment #7

[26] Le Roux 000570.  Though Le Roux has been working with Loomis and Ballard as "ICON" for 4 or 5 months, he is still referring to them as the "Treehouse guys" to Boroja.

[27] Le Roux 000504 (emphasis added)

[28] Le Roux 000504

**email or disclose its contents to him.**[29] In addition to the conspiratorial nature of this email, it is also a tacit admission that Boroja owned a "stake and rights" in ALR that ICON would have to acquire from him.

40.    **Then on a July 26, 2017 phone call, Le Roux tells Boroja the fifth, sixth, and seventh lies.** During that call, Le Roux told Boroja that "the Treehouse guys" no longer wanted to proceed with a business relationship with them. Which means that only eight days after the email exchange with Loomis, Defendants had made the decision to take ALR's Valuable Assets without offering or giving Boroja *any* compensation for them at all. When Boroja asked why the Treehouse guys did not want to proceed, Le Roux falsely claimed that Loomis and Ballard wanted to go their own way. Le Roux further falsely represented that he wanted to close ALR down and look for an engineering job and that, essentially, his efforts to create a 3D concrete printer to construct houses were over. **Once again, Le Roux deliberately failed to disclose that he was already working with Loomis and Ballard at ICON and had transferred ALR's Valuable Assets to ICON though he had the opportunity to do so.**[30] To have disclosed that truth meant that Boroja would claim his 20% of the value of the assets that had been transferred to Defendants, or would seek a buy-out, or would want to maintain his interest in the technology; any scenario meant less for Le Roux and his ICON co-conspirators, or a potential roadblock to their plans.

41.    Boroja, naturally, expressed his dissatisfaction with Le Roux's purported course of action because it would mean his investment in ALR would be lost. Le Roux repeated the lies, however, that there was nothing he could do, and falsely assured Boroja that his participation in this venture of building structures using a 3D printer was over and he was going to move onto

---

[29] Deliberate Non-Disclosure/Concealment #8

[30] Deliberate Non-Disclosure/Concealment #9

other types of ventures.  Certainly Le Roux was not letting on that he had jumped to a competing entity and had taken ALR's Valuable Assets with him.

**B. In August 2017 Le Roux, Loomis, and Ballard were fully engaged in leveraging the ill-gotten Vesta Printer technology for the benefit of ICON.  Le Roux unilaterally terminated ALR and sent Boroja the final tax return, which does not disclose the transfer of ALR's Valuable Assets.**

42.     In stark contrast to what he was telling Boroja, by **August 10, 2017** Le Roux was putting the Vesta Printer technology to work toward development of ICON's Vulcan printer.  **On this date, Le Roux sent an email to Loomis and Ballard -- but not Boroja – with "Tentative action items for coming week."[31]**  These action items included: "1. Alex/Evan: Pump Studios: reply to email and finalize deal terms" and – significantly – item **"5. Alex: Continue design documentation for smooth transfer to Pump."**[32]

43.     During this time period, Defendants were engaging Pump Studios, LLC ("Pump Studios"), a product design engineering firm, to assist with the design and engineering of the Vulcan Printer based upon the Vesta Printer technology.  The "deal terms" that Le Roux refers to in Item 1 is likely the project cost and equity stake that Le Roux, as "Co-Founder" of ICON, proposed to Pump Studios.  **This was in an August 8, 2017 email thread[33] that Ballard and Le Roux are copied on, but did not include Boroja**:[34]

---

[31] Deliberate Non-Disclosure/Concealment #10

[32] Le Roux 000526

[33] Pump_Studios0162319-2321

[34] Deliberate Non-Disclosure/Concealment #11.  Note: Le Roux has objected to providing his ICON emails to Boroja in response to requests for production, and ICON, Loomis, and Ballard similarly objected and refused to produce them in response to a subpoena.

On Tue, Aug 8, 2017 at 1:11 PM, Alex Le Roux <alex@icon3d.co> wrote:
Hi, Peter-

Just spoke with Evan.

Sounds like you and Evan had a good conversation...

Just so we are all on the same page, here are the figures it sounds like we all have in mind:

- $50k cash over course of project,
- $50k deferred payment to be paid upon ICON financing round,
- 1% equity in ICON for Pump Studios.

...with the intention of building a long lasting working relationship b/t Pump Studios and ICON.

This would cover:

- A point person on the team dedicated to project,
- Senior team members at Pump Studios "looking over the shoulder",
- End-to-end project management.

Does this sound about right?

Best,

Pump_Studios0162320

Alex Le Roux
// ICON //
Co-Founder
m: 713.894.5484
alex@icon3d.co

44.      The significance of Item 5 is that ICON had sent a request for proposal ("RFP") to Pump Studios that proffered a "start date" of **August 15, 2017** and listed Le Roux as ICON's technical point of contact.[35]  The RFP asks for a "**review of current CAD design decisions,**"[36] and it provides a "**Review of Previous Work**" that touts a "**Printed 'Tiny Home'**" – using the earlier photo of Le Roux and the ALR printed house that was partially funded by Modeco.[37]  The RFP also provides a "**Demonstration of Technology**" that uses a photo of a printer with the name "**Vesta**" emblazoned across it.[38] **Again, all of this was occurring without disclosure to Boroja by the Defendants and *while* Le Roux was still a managing member of ALR.[39]**

---

[35] Pump_Studios0161207

[36] Pump_Studios0161208

[37] Pump_Studios0161209

[38] Pump_Studios0161209

[39] Deliberate Non-Disclosure/Concealment #12

Plaintiff's 3rd Amended Original Petition          16



Request for Proposal

Background                                                    0
Overview                                                      1
Team                                                          1
Scope of Work                                                 1
  Design (70%)                                                1
  Procurement and Fabrication of Components (2%)              2
  Assembly (3%)                                               2
  Finalizing (25%)                                            2
Current CAD Design                                            2
Current Design Renderings                                     2
Review of Previous Work                                       5

**Review of Previous Work**

**Printed 'Tiny Home'**
Note: team understanding of
cementitious extrusion much improved
since this item was printed.

(click here for higher res picture)



**Demonstration of Technology**
Technical exploration of
reliability, market interest, and
usability.



45.    Pump Studios responded to the RFP on **August 22, 2017**, with a proposal that included the following statements:[40]

> **Icon3D has developed and prototyped a concept for 3D printing houses using concrete**. . . .
>
> ***
>
> Icon has developed a preliminary design for the demonstration print in March, and **the design is well supported by previous prototype work, analysis, and extensive research**.
>
> ***
>
> Pump will work through the first two weeks to quickly get up to speed on the project and **work done to date**.
>
> ***
>
> **Icon3D will provide Pump with all existing 3D models, 2D drawings, and physical samples of all mechanical parts, research findings, analysis, and other project materials as requested by Pump**.

The first time Boroja became aware of Pump Studios's response to the RFP was in November 2022, when Pump Studios provided documents in response to a subpoena duces tecum. **Defendants have never disclosed this information to Boroja – including in their responses to written discovery requests.**[41]

46.    Importantly, both the ICON RFP and Pump Studios' response is the recognition by

---

[40] Pump_Studios0161100-1103

[41] Deliberate Non-Disclosure/Concealment #13

both ICON and Pump Studios that there is "previous prototype work, analysis, and extensive research." And in the RFP, ICON asserts that the previous work is the Vesta Printer and the printed "tiny house" that ALR built with funding provided by Boroja. And yet, Boroja had no idea who ICON or Pump Studios were, or that Le Roux was working with them to create a printer out of the very printer and technology that Boroja owned 20% of through ALR.

47.    **In fact, at the exact same time that Defendants were busy building what is really the Vesta 3 printer (which Le Roux had planned and designed as managing member of ALR), Le Roux continued his scheme to conceal his ICON activities from Boroja with the eighth lie:** on **August 15, 2017** Le Roux sent Boroja a final tax return on showing that ALR had a loss of -$6,808.00.[42] But the tax return that Le Roux unilaterally had prepared **does not reflect any gross receipts or sales from the transfer of ALR's Valuable Assets to ICON, or any distribution of ALR's Valuable Assets to Le Roux.** In other words, Le Roux made sure the tax return, which reflected that ALR had no value or assets left in the company, was consistent with the sob story and lies he told to Boroja a month earlier so that Boroja would never know that Le Roux either distributed ALR's Valuable Assets to the Defendants, or sold "**all the intellectual property, rights, designs, etc.**" to ICON, Loomis, and/or Ballard as Loomis had secretly proposed to Le Roux on February 2017.

48.    Eight days later, "the Plan" that Defendants had crafted in February 2017 was nearly accomplished; all that was left was to ensure that Boroja had no reason or incentive to investigate the fraudulent transfer of ALR's Valuable Assets. On **August 23, 2017**, Le Roux filed a Certificate of Termination for ALR without Boroja's consent. Le Roux signed the certificate "subject to the penalties imposed by law for the submission of a materially false or fraudulent

---

[42] Le Roux 000571-590

instrument." Yet he identified only himself as a governing person of ALR and failed to include Boroja as a governing person as required by law. Consequently, Le Roux submitted a materially false or fraudulent instrument with the Texas Secretary of State.

49.     Boroja brings this action now because, had Boroja known the truth about what Defendants were actually doing or had done, he would have required Le Roux and/or those acting in concert with him, to properly compensate him for his portion of ALR's assets that were fraudulently transferred, stolen, and/or misappropriated by Le Roux and his co-conspirators.

## LIMITATIONS TOLLED

### C. Boroja learned in December 2021 that Le Roux had misrepresented everything about leaving the business, including Loomis and Ballard's decision to "go their own way."

50.     Le Roux's termination of ALR – though improper – was consistent with the materially false representations he made to Boroja in July 2017 that he was leaving the business and pursuing an engineering job. Boroja had no reason to suspect or believe Le Roux's representations to him in July 2017 were false because of Le Roux's misrepresentations about the (purportedly) failed deal with Loomis and Ballard; Le Roux's (claimed) desire to get out of the business and do something else; and the closing down of ALR along with the final tax return that did not disclose the transfer of ALR's Valuable Assets. These misrepresentations all supported Le Roux's claim that he was exiting from the business. Boroja – who lives in Michigan – moved on to other businesses. Boroja was then no longer involved in 3D house printing, and certainly had no reason to investigate later developments in the Texas 3D printing market, or to check into "SXSW 2018" where Defendants debuted their Vulcan Printer.

51.     Rather, it was not until December 2021 when Boroja was running a Google search on his own company Modeco that he by chance found an article that also mentioned Le Roux. With his curiosity piqued, Boroja then searched for further information to see what Le Roux was

currently doing.  Only then did Boroja discover that Le Roux had falsely represented that he was leaving the 3D concrete printing business but had instead gone on to partner with Loomis and Ballard in ICON, and to develop a printer that appeared to have many similarities to the Vesta and, more suspiciously, the planned Vesta 3.

52.    Through further internet research Boroja discovered that Le Roux, Loomis, and Ballard together had formed ICON far earlier than he would have believed.  In an interview published in January 2021 that Le Roux gave to web-based publication 3D Natives (www.3dnatives.com), Le Roux states that he, Loomis, and Ballard co-founded ICON in 2017 "to develop advanced construction technologies that advance humanity by using 3D printing robotics, software and advanced materials."[43]  This statement is fully consistent with what Le Roux told Raissa Ferron on March 3, 2017.[44]

53.    More disturbing is Le Roux's statement in the 3dNatives.com article that the "Vulcan Printer" that ICON uses to 3D print its concrete housing structures was based upon "a multi-year mission to build my own printer" – which, of course, was the Vesta Printer and the Technical Information that was owned by ALR and its members.  Le Roux went on to state in the interview that the Vulcan 3D printer was unveiled during the March 2018 SXSW conference in Austin, Texas (only six months after Le Roux dissolved ALR) to showcase "the first permitted, 3D printed home in the U.S."

54.    Boroja has begun to fill in many of the gaps through discovery following the filing of this lawsuit.  It has become apparent that the ICON founders – Le Roux, Loomis, and Ballard – began working together to fraudulently acquire ALR's Valuable Assets long before Boroja was

---

[43] "#3Dstartup: ICON re-imagines the approach to construction," Jan. 12, 2021, *www.3dnatives.com*.
[44] Le Roux 000442-443

told ALR was struggling and may be shut down; and it is clear that they engaged in a deliberate scheme to conceal such wrongful acquisition from Boroja.  As set forth throughout this petition, the facts demonstrate that Defendants had actual knowledge that Boroja was defrauded when ALR's Valuable Assets ended up in ICON's technology portfolio, and that the Defendants had a fixed purpose to conceal from Boroja the facts that would alert him to the fraud.  These facts are alleged as follows:

- Defendants knew they could only lawfully acquire ALR's Valuable Assets by purchasing Boroja's interest in them:

    o ¶22:  On February 2, 2017, Le Roux and Boroja, on behalf of ALR, met with Loomis and Ballard, purportedly on behalf of Treehouse.  Loomis and Ballard learned at this time of Boroja's ownership interest in ALR.

    o ¶25:  On February 21, 2017, Loomis misrepresents to Boroja that Boroja's "buy-out" price was too high and would prohibit their "moving forward with Alex."  Ballard is copied on the email.

    o ¶26:  On February 23, 2017, Loomis tells Le Roux that ICON can either "buy the whole company [ALR]" or "'buy' all the intellectual property, rights, designs, etc."

    o ¶30:  On March 3, 2017, Le Roux tells future ICON affiliate Raissa Ferron that he is now a co-founder of ICON, and then Loomis adds that ICON "would like to set up a Vesta Printer outdoors at your facility."  But there has been no purchase or lawful transfer of Boroja's interest in the Vesta Printer or any other ALR asset, and the Defendants are well aware of this.

    o ¶38:  On July 18, 2017, Le Roux emails Loomis his proposed language to get Boroja to sell his "stake and rights to ALR" to "the co-founders of Treehouse."

- Defendants purposefully concealed their scheme from Boroja so that they could abscond with the Vesta Printer technology and prevent Boroja from realizing it. Without fail, in all their communications concerning the scheme to defraud Boroja and usurp the Vesta Printer technology and other ALR Valuable Assets, *not one* of these communications includes Boroja:[45]

---

[45] *See infra* ¶¶23, 24, 27, 29, 31, 34, 36, 38, 39, 42-46.

o ¶¶23, 24, 29, 30, 35: discussing the Vesta Printer and the Vesta Printer technology, and plans to build their own printer based on the Vesta.

o ¶¶34, 35:  the "pitch decks" touting the Vesta Printer as ICON's own prototype.

o ¶¶24, 29, 30, 34, 36, 43-46:  the introductions and representations of Le Roux as having joined ICON or as a "co-founder" with Loomis (while Le Roux was still a managing member of ALR).

o ¶¶42-45:  the engagement of Pump Studios to build upon the Vesta Printer technology, designs, and drawings.

o ¶¶26, 38:  discussions about how to "buy" ALR's Valuable Assets from Boroja, but don't include Boroja.

o ¶47-48:  the improper unilateral termination of ALR and the final tax return that fails to disclose any sale or transfer of assets to ICON or anyone.

55.    The communications revealed in discovery support the underlying conspiracy that Boroja was alerted to after reading the January 12, 2021 3dNatives.com article: Le Roux, acting in concert with Loomis and Ballard, intentionally deceived Boroja in order to neutralize him while transferring ALR's Valuable Assets to ICON.  Le Roux and his new business partners used this information to create the ICON Vulcan printer, all to Boroja's detriment.  But for the fraudulent transfer of ALR's Valuable Assets, it is unlikely that ICON would have been able to create the Vulcan printer and to raise the funds to propel its business forward a mere seven months after co-founding ICON together.

56.    The fraudulent concealment perpetrated by Defendants tolls the limitations periods for Plaintiff's claims.  "A person cannot be permitted to avoid liability for his actions by deceitfully concealing wrongdoing until limitations has run," *Hooks v. Samson Lone Star Ltd. Ptnrp.*, 457 S.W.3d 52, 57 (Tex. 2015) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996)).  Because "'fraud vitiates whatever it touches,' limitations does not start to run until the fraud is discovered or the exercise of reasonable diligence would discover it." *Id.* (internal citations omitted).  While the date

a cause of action accrues is normally a question of law, "reasonable diligence is an issue of fact." *Id.* at 57-58 (citing *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 623 (Tex. 2011) (per curiam).

57.    **As shown, Le Roux and his co-conspirators made no fewer than eight (8) fraudulent representations to Boroja between February and August 2017 that were designed to conceal Defendants' unlawful conduct**.  Indeed, Le Roux represented to Boroja in July 2017 that discussions with Loomis and Ballard of Treehouse had ended, and that Loomis and Ballard had decided not to pursue business with ALR and were "going their own way."  Yet by then, Defendants (and ostensibly others) had nearly completed "the Plan" to launch ICON using ALR's Vesta Printer technology as its foundation.

58.    **As further alleged above, the Defendants engaged in at least thirteen (13) instances of deliberate non-disclosure or concealment of their activities from Boroja, and the extent to which Defendants concealed their usurpation of ALR's Valuable Assets, especially the Vesta Printer technology, from Boroja has only come to light as a result of the discovery conducted in this matter, and is still being actively concealed as more parties are found to be complicit in the scheme.**  Though Boroja sent document subpoenas to Loomis, Ballard, ICON, and Pump Studios prior to filing his Second Amended Original Petition, giving them the opportunity to clarify or explain the condemning story told by the documents thus far produced by Le Roux, only Pump Studios produced any documents, and those documents support Plaintiff's claims.  Loomis, Ballard, and ICON only served objections and refused to produce documents to Boroja's requests that sought:

- "COMMUNICATIONS in 2017 and 2018 that relate to or concern LE ROUX's investment in or formation of ICON."

- "Information provided by LE ROUX for the development of ICON's "Vulcan Printer," including, but not limited to, trade secrets, drawings, diagrams,

schematics, samples, sketches, software, source code, material lists, vendor lists, formulas, calculations, technical data, and hardware."

- "COMMUNICATIONS concerning BOROJA."

- "LE ROUX's ownership interest in ICON, including, but not limited to, ICON corporate documents such as by-laws, shareholder agreements, corporate resolutions and minutes, sharing ratios, valuations, and contributions by LE ROUX."

- "Information provided by YOU to Pump Studios, Inc. for the fabrication, sourcing, testing, and optimization of the Vulcan printer, including but not limited to unpublished research and development information, unpatented inventions, know-how, trade secrets, drawings, sketches, software, source code, material lists, vendor lists, formulas, calculations, technical data, diagrams, schematics, samples, and hardware."

59.    Because of the concerted effort by Defendants to conceal their scheme through secrecy, back-room deals, and patently false representations to Boroja that have only just come to light, all of the statutes of limitation on each of the above-stated causes of action are tolled through and until no earlier than December, 2021, when Boroja independently discovered Defendants' fraud upon him, and perhaps even up to the date of Le Roux's recent and revealing document production.

**CAUSES OF ACTION**

**Count 1:**
**Violation of Texas Uniform Fraudulent Transfer Act**
**Texas Business and Commerce Code §24.001 *et seq*.**
***(Against Le Roux, Loomis, Ballard, and ICON)***

60.    Boroja incorporates the preceding paragraphs as if fully stated herein.

61.    This claim is made against Le Roux, Loomis, Ballard, and ICON ("Count 1 Defendants").

62.    As a member of ALR, Boroja owned a 20% interest in the company and its assets. Per Tex. Bus. & Comm. Code §11.053(c), "after a domestic entity has discharged, or made

adequate provision for the discharge of, all of its liabilities and obligations, the domestic entity shall distribute the remainder of its property, in cash or in kind, to the domestic entity's owners according to their respective rights and interests." Boroja was entitled to 20% of the assets of ALR upon dissolution and is a creditor of ALR within the Texas Uniform Fraudulent Transfers Act ("TUFTA"), Tex. Bus. & Comm. Code §24.002(4).

63.    Boroja's claim arose within a reasonable time after the transfer was made but was not discovered until years later – in December 2021 – due to the active and prolonged concealment by Le Roux and those acting in concert with him. Le Roux transferred ALR's Valuable Assets to ICON between February and August 2017, and dissolved ALR on August 23, 2017, without distributing assets to Boroja. And he fraudulently represented that ALR had no Valuable Assets in the final tax return that he presented to Boroja. Boroja's claim was therefore established, even though undiscovered, upon dissolution of ALR. Boroja only recently learned that he was entitled to ALR's Valuable Assets upon ALR's dissolution when he discovered that they had been fraudulently transferred to Defendants and were being used by them.

64.    Le Roux transferred the assets to one or more of the Count 1 Defendants, ultimately for the transfer to ICON, of which Le Roux is a "co-founder" and an insider. The assets were transferred with the actual intent to hinder and delay Boroja from discovering and preventing the transfer, and to defraud Boroja of his interest in ALR Valuable Assets, which included the Vesta Printer technology.

65.    Le Roux and the other Count 1 Defendants wrongfully caused the transfer of substantially all of ALR's assets and concealed the transfer from Boroja, the other managing member of ALR. The value received for the transfer was not reasonably equivalent to the value of the assets transferred, and ALR was left insolvent.

66.    Boroja suffered injury as a result of the fraudulent transfer and seeks actual damages in an amount to be determined at trial.

67.    In the alternative to their direct liability, ICON, Loomis, and Ballard ("the ICON Defendants") assisted and encouraged Le Roux's unlawful transfer of ALR's Valuable Assets. The ICON Defendants knew that Le Roux's conduct was tortious, because each knew that Le Roux and Boroja were both members of ALR and that it would be necessary to "buy out" Boroja's interest in ALR in order for ALR to transfer its assets to any of the Defendants.[46]  Yet the ICON Defendants actively helped Le Roux not only to use ALR's Valuable Assets to design, build, and promote ICON's Vulcan Printer, but also assisted in the concealment of all their activities from Boroja to prevent his rightful protest.[47]

68.    Indeed, in all their communications discussing the Vesta Printer and the Vesta Printer technology, the plans to build their own printer, the "pitch decks" touting the Vesta as ICON's own prototype, the introductions of Le Roux and Loomis as "Co-Founders" of ICON, and the engagement of Pump Studios to build upon the Vesta Printer technology, designs, and drawings, *not one* of these communications includes Boroja.[48] He is blatantly and obviously absent from any such discussions and activities, even though Le Roux, Loomis, and Ballard are almost *always* included.  And during the time that such communications were made, all the ICON Defendants knew that Boroja owned a 20% interest in ALR (and its Valuable Assets) and had neither sold nor agreed to the transfer of his interest in such assets.

69.    The ICON Defendants intended to assist Le Roux in accomplishing the fraudulent

---

[46] *See infra* ¶¶22, 25, 26, 38.

[47] *See infra* ¶¶23-27, 29-31, 34, 36, 38-39, 42-46 (all describing instances of concealment of the scheme from Boroja, as well as Loomis' direct, intentional misrepresentation to Boroja).

[48] *See infra* ¶¶23, 24, 27, 29, 31, 34, 36, 38-39, 42-46.

transfer of ALR's Valuable Assets for the benefit of ICON, and without the required consent of Boroja and without distributing to Boroja his share of ALR's assets. The ICON Defendants' intentions to assist and encourage Le Roux to fraudulently transfer the ALR Valuable Assets are evidenced by their own complicity in using the Vesta Printer technology – and even the Vesta Printer itself[49] – while knowing that Boroja owned an interest in it; in knowing that they had not purchased from or been given consent by Boroja to use it; and in concealing the scheme from Boroja by both actively misrepresenting material facts to him and explicitly excluding him from any communications having to do with ICON or the Vesta Printer technology.

70.    The ICON Defendants' assistance and encouragement was a substantial factor in causing Le Roux's fraudulent transfer of ALR's Valuable Assets. The ICON Defendants created the impetus for Le Roux to transfer the assets to their company[50], and provided the resources for taking the Vesta Printer and making it into the Vulcan Printer, without compensating Boroja for his interest in it.

71.    Boroja suffered injury as a result of Le Roux's fraudulent transfer and the ICON Defendants are each jointly and severally liable for Boroja's actual damages, as well as exemplary damages because Le Roux acted willfully and with malice.

**Count 2: Fraud**
(*Against Le Roux, Loomis, and ICON*)

72.    Boroja incorporates the preceding paragraphs as if fully stated herein.

73.    Le Roux and Loomis (the "Count 2 Defendants") made material misrepresentations of fact to Boroja with the intent to prevent Boroja from discovering and interfering with Le Roux's

---

[49] See *infra*, e.g., ¶¶43-46.

[50] *See infra* ¶23; Prior to meeting with some of the ICON Defendants, Le Roux and Boroja had plans to develop the third version of the Vesta Printer together.

Plaintiff's 3rd Amended Original Petition            27

scheme to shut down ALR and transfer ALR's Valuable Assets to a competing entity without compensating Boroja or securing Boroja's consent.

74. Boroja justifiably relied on the Count 2 Defendants' misrepresentations because the (purportedly) failed deal with Loomis and Ballard, Le Roux's (claimed) desire to get out of the business and do something else, the claim that Boroja's buy-out price was prohibitive to Loomis and Ballard's moving forward with Le Roux, the closing down of ALR along with the transmittal to Boroja of the final tax return showing that did not disclose the sale or transfer of assets, all supported Le Roux's representation that he was exiting from the business.

75. As illustrated in the allegations above, however, Le Roux had surreptitiously made a deal with Loomis and Ballard while he was telling Boroja that he was quitting the business and the Treehouse partners were going their own way. Le Roux tried to get Boroja to sign agreements limiting Boroja's role in ALR and allowing Le Roux to unilaterally dissolve the company and transfer the assets. Though Boroja did not sign these, Le Roux nonetheless took precisely those actions in August 2017. As Boroja has just discovered, Le Roux, Loomis, and Ballard had in fact set in motion their secretive Plan for ICON months earlier.

76. Boroja has been injured by Le Roux's fraud because he has been deprived of the value of his interest in ALR, including the Vesta Printer technology, which were transferred by Le Roux to ICON, a direct competitor to ALR, thereby diminishing the value of Boroja's interest.

77. Boroja seeks actual and consequential damages resulting from Le Roux's deception, concealment, and fraudulent transfer of Boroja's interest in ALR.

78. In the alternative, Boroja seeks recovery against Le Roux for unjust enrichment based on the value Defendants gained by his fraudulent transfer, such as Le Roux's gained profits and the market value of the property converted by Le Roux.

79.     In further alternative, if no specific injury can be found, Boroja seeks damages in the form of a reasonable royalty based on what willing licensors and licensees would settle on as the value of the converted property

80.     Boroja is also entitled to and seeks exemplary damages because Le Roux acted willfully and with malice.

81.     In the alternative to their direct liability, ICON, Loomis, and Ballard ("the ICON Defendants") assisted and encouraged Le Roux's fraudulent scheme to abscond with ALR's Valuable Assets.  The ICON Defendants knew that Le Roux's conduct was tortious, because each knew that Le Roux and Boroja were both members of ALR and that it would be necessary to "buy out" Boroja's interest in ALR in order for ALR to transfer its assets to any of the Defendants.[51] Yet the ICON Defendants actively helped Le Roux not only to use ALR's Valuable Assets to design, build, and promote ICON's Vulcan Printer, but also assisted in the concealment of all their activities from Boroja to prevent his rightful protest.[52]

82.     Indeed, in all their communications discussing the Vesta Printer and the Vesta Printer technology, the plans to build their own printer, the "pitch decks" touting the Vesta as ICON's own prototype, the introductions of Le Roux and Loomis as "Co-Founders" of ICON, and the engagement of Pump Studios to build upon the Vesta Printer technology, designs, and drawings, *not one* of these communications includes Boroja.[53]  He is blatantly and obviously absent from any such discussions and activities, even though Le Roux, Loomis, and Ballard are almost *always* included.  And during the time that such communications were made, all the ICON

---

[51] *See infra* ¶¶22, 25, 26, 38.

[52] *See infra* ¶¶23-27, 29-31, 34, 36, 38-39, 42-46 (all describing instances of concealment of the scheme from Boroja, as well as Loomis' direct, intentional misrepresentation to Boroja).

[53] *See infra* ¶¶23, 24, 27, 29, 31, 34, 36, 38-39, 42-46.

Defendants knew that Boroja owned a 20% interest in ALR (and its Valuable Assets) and had neither sold nor agreed to the transfer of his interest in such assets.

83.     The ICON Defendants intended to assist Le Roux in accomplishing the scheme to defraud Boroja of his interest in ALR's Valuable Assets, for the benefit of ICON.  The ICON Defendants' intentions to assist and encourage Le Roux's fraudulent scheme are evidenced by their own complicity in using the Vesta Printer technology – and even the Vesta Printer itself[54] – while knowing that Boroja owned an interest in it; in knowing that they had not purchased from or been given consent by Boroja to use it; and in concealing the scheme from Boroja by both actively misrepresenting material facts to him and explicitly excluding him from any communications having to do with ICON or the Vesta Printer technology.

84.     The ICON Defendants' assistance and encouragement was a substantial factor in causing Le Roux's scheme to defraud Boroja of his interest in ALR's Valuable Assets.  The ICON Defendants created the impetus for Le Roux to transfer the assets to their company[55], and provided the resources for taking the Vesta Printer and making it into the Vulcan Printer, without compensating Boroja for his interest in it.

85.     Boroja suffered injury as a result of Le Roux's fraud and the ICON Defendants are each jointly and severally liable for Boroja's actual damages, as well as exemplary damages because Le Roux acted willfully and with malice.

**Count 3: Conspiracy**
(***Against Le Roux, Ballard, Loomis, and ICON***)

86.     Boroja incorporates the preceding paragraphs as if fully stated herein.

---

[54] See *infra*, e.g., ¶¶29-31, 34-35, 42-46.

[55] *See infra* ¶23.  Prior to meeting with some of the ICON Defendants, Le Roux and Boroja had plans to develop the third version of the Vesta Printer together.

87.    Defendants Le Roux, Ballard, Loomis, and ICON had a meeting of the minds and agreed together to accomplish the unlawful transfer of ALR's Valuable Assets to ICON, including the Vesta Printer technology, without compensation to Boroja.

88.    The object of the conspiracy was to accomplish the transfer and wrongful appropriation of ALR's assets, defraud Boroja of his interest in the assets, and use them to develop and design the Vulcan Printer for the benefit of ICON.

89.    At least one of the Defendants committed an overt unlawful act to further the scheme.  For example, Le Roux made material misrepresentations to Boroja in furtherance of the conspiracy to fraudulently transfer the assets to ICON.

90.    Boroja was injured as a proximate result of the fraud and fraudulent transfer, and seeks actual and consequential damages resulting from Defendants' deception, concealment, and fraudulent transfer of Boroja's interest in ALR.

## Count 4: Violation of RICO
## 18 U.S.C. §1962(a)
### (Against Le Roux, Loomis, Ballard, and ICON)

91.    Boroja incorporates the preceding paragraphs as if fully stated herein.

92.    Le Roux, Loomis, Ballard, and ICON ("Count 4 Defendants") are each persons within the meaning of 18 U.S.C. §1961(3).

93.    ICON is a legal entity and therefore an enterprise within the meaning of 18 U.S.C. §1961(4).  In addition, Le Roux, Loomis, Ballard, and ICON are associated in fact (the "ICON Association") and therefore also constitute an enterprise within the statute's definition.  The activities of ICON and the ICON Association affect interstate commerce because, among other things, they have solicited and been granted public and private funding throughout the United States and elsewhere, and they applied for and been granted patents by the United States Patent

and Trademark Office.

94.    The Count 4 Defendant(s) used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise between February 2017 and the present. Specifically, the Count 4 Defendants obtained and continue to use ALR's Valuable Assets through a pattern of phone and internet communications to (1) misrepresent to Boroja that they were negotiating a potential merger or collaboration between ALR and Loomis and Ballard; (2) misrepresent to Boroja that his price for the buyout of his ALR interest had made it prohibitive for Loomis, Ballard, and/or ICON to continue negotiating with Le Roux, when in fact they had already secretly struck a deal and joined forces with Le Roux; (3) conceal the transfer of ALR's Valuable Assets to ICON or the ICON Association; (4) conceal the fact that Le Roux was working with ICON as a co-founder and using the Vesta Printer technology to help ICON or the ICON Association design and develop the Vulcan Printer; (5) prepare and transmit ALR's final tax return with no disclosure of the transfer or sale of ALR's Valuable Assets; (6) represent to Boroja that ALR's assets were depleted or valueless upon dissolution in order to conceal the fraudulent transfer; and (7) apply for and obtain United States patents using the fraudulently acquired assets and technology.. These activities constitute violations of 18 U.S.C. §1343 and are a pattern of racketeering activity in within 18 U.S.C. §1961(5).

95.    It was foreseeable that the Count 4 Defendants' scheme would rely on wire communications and did in fact use interstate wire communications to further the fraudulent scheme, including phone and internet-based communications to Boroja, among each other, and with third parties to whom they transmitted the Vesta Printer technology, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

96.     The Count 4 Defendants invested the proceeds of the fraud – ALR's Valuable Assets – into ICON and/or the ICON Association.  The investment of ALR's Valuable Assets directly led to the design, development, and eventual completion of ICON's Vulcan Printer, as well as ICON's application for more than a dozen patents based thereon.  The patents and patent applications, and the creation of the Vulcan Printer on the basis of the Vesta Printer Technical Information, permanently deprived Boroja of the opportunity to benefit from his interest in the Vesta Printer technology, among other ALR Valuable Assets.

97.     As direct and proximate result of the Count 4 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(a), Boroja has been injured in his business and property in that ALR's Valuable Assets in which Boroja holds a 20% interest have been made public through ICON's patent applications and the opportunity to capitalize upon or derive benefit from the assets has been permanently lost to Boroja without any compensation therefore.

98.     Boroja requests that this Court enter judgment against the Count 4 Defendants and award Boroja actual and treble damages as proved at trial and attorney's fees under 18 U.S.C. §1964(c).

### Count 5: Violation of RICO
### 18 U.S.C. §1962(c)
### (*Against Le Roux, Loomis, and Ballard*)

99.     Boroja incorporates the preceding paragraphs as if fully stated herein.

100.    Boroja is a person who has been injured in his business or property as a result of Defendants Le Roux, Loomis, and Ballard's ("Count 5 Defendants") violation of 18 U.S.C. §1962(c) through a pattern of wire fraud in violation of 18 U.S.C. §1343 to further their scheme to defraud Boroja of his interest in ALR's Valuable Assets, including the Vesta Printer technology.

101.    ICON is an enterprise engaged in and whose activities affect interstate commerce.

The Count 5 Defendants are employed by or associated with the enterprise.

102.   The Count 5 Defendants obtained and continue to use ALR's Valuable Assets through a pattern of phone and internet communications to (1) misrepresent to Boroja that they were negotiating a potential merger or collaboration between ALR and Loomis and Ballard; (2) misrepresent to Boroja that his price for the buyout of his ALR interest had made it prohibitive for Loomis, Ballard, and/or ICON to continue negotiating with Le Roux, when in fact they had already secretly struck a deal and joined forces with Le Roux; (3) conceal the transfer of ALR's Valuable Assets to ICON or the ICON Association; (4) conceal the fact that Le Roux was working with ICON as a co-founder and using the Vesta Printer technology to help ICON or the ICON Association design and develop the Vulcan Printer; (5) prepare and transmit ALR's final tax return with no disclosure of the transfer or sale of ALR's Valuable Assets; (6) represent to Boroja that ALR's assets were depleted or valueless upon dissolution in order to conceal the fraudulent transfer; and (7) apply for and obtain United States patents using the fraudulently acquired assets and technology.   These activities constitute violations of 18 U.S.C. §1343 and are a pattern of racketeering activity in within 18 U.S.C. §1961(5).

103.   The Count 5 Defendants agreed to and did conduct and participate in the conduct of ICON's affairs through this continuing pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Boroja and using the fruits of their scheme – the Vesta Printer technology – to apply for and obtain patents.   Specifically, the Count 5 Defendants designed and developed the Vulcan Printer and multiplied the assets and business of ICON through misrepresentations to Boroja and fraudulent transfer of ALR's Valuable Assets.

104.   Pursuant to and in furtherance of their fraudulent scheme, the Count 5 Defendants committed multiple related acts of wire fraud as alleged in the facts stated in this Petition.

105. It was foreseeable that the Count 5 Defendants' scheme would rely on wire communications and did in fact use interstate wire communications to further the fraudulent scheme, including phone and internet-based communications to Boroja, among each other, and with third parties to whom they transmitted the Vesta Printer technology, constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

106. The Count 5 Defendant(s) have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c).

107. As a direct and proximate result of the Count 5 Defendants' racketeering activities and violations of 18 U.S.C. § 1962(c), Boroja has been injured in his business and property in that ALR's Valuable Assets in which Boroja holds a 20% interest have been made public through ICON's patent applications and the opportunity to capitalize upon or derive benefit from the assets has been permanently lost to Boroja without any compensation therefore.

108. Boroja requests that this Court enter judgment against the Count 5 Defendants and award Boroja actual and treble damages as proved at trial and attorney's fees under 18 U.S.C. §1964(c).

### Count 6: Violation of RICO
### 18 U.S.C. §1962(d)
### (*Against Le Roux, Loomis, and Ballard*)

109. Boroja incorporates the preceding paragraphs as if fully stated herein.

110. As set forth above, Defendant Le Roux, Loomis, and Ballard ("Count 6 Defendants") agreed and conspired to violate 18 U.S.C. § 1962 (a) and (c). Specifically, the Count 6 Defendants (1) agreed to pursue a scheme to invest the income or proceeds of income derived from a pattern of racketeering activity into ICON, an enterprise affecting interstate commerce

(§1962(a)); and (2) agreed to operate and conduct the affairs of ICON, an enterprise affecting interstate commerce, through a pattern of racketeering activity (§ 1962(c)).

111.    The Count 6 Defendants knew that their acts of fraud foreseeably would, and did, use internet and phone communications in violation of 18 U.S.C. §1343 and agreed to the commission of those acts to further the schemes described above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(a) and (c) in violation of 18 U.S.C. § 1962(d).

112.    As direct and proximate result of the Count 6 Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Boroja has been injured in his business and property.

113.    Boroja requests that this Court enter judgment against the Count 6 Defendants and award Boroja actual and treble damages as proved at trial and attorney's fees under 18 U.S.C. §1964(c).

## ATTORNEY'S FEES

114.    Boroja incorporates by reference the preceding paragraphs and allegations as set forth fully herein at length. Plaintiff seeks the recovery of his reasonable and necessary attorney's fees.

## PRAYER

WHEREFORE, Plaintiff Dragan Boroja prays that the Court, upon trial of this matter or summary disposition, enter judgment against Defendants as follows:

1.    Enter a judgment against Defendants on all counts of this 3rd Amended Original Petition or any amendments thereto;

2.    Award Plaintiff Boroja actual, consequential, equitable, statutory, and exemplary damages;

Plaintiff's 3rd Amended Original Petition                36

3.      Award Boroja his attorney's fees necessary for prosecuting this action;

4.      Award Boroja pre-and post-judgment interest at the highest rates allowable by law;

5.      Award Boroja costs of court; and

6.      Award Boroja such other and further relief to which he may be entitled.

Respectfully submitted,

*/s/ Sean T. Hamada*

Sean T. Hamada
State Bar No. 24014448
**HAMADA SMITH, PLLC**
15455 North Dallas Parkway, Ste. 600
Addison, Texas 75001
Tel: (972) 872-8884 | Fax: (972) 872-8883

**ATTORNEYS FOR PLAINTIFF
DRAGAN BOROJA**

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above-referenced document was served on all counsel of record on December 7, 2022 in the manner described below.

*/s/ Sean T. Hamada*

Sean T. Hamada

**Via E-Service**
Yusuf Bajwa
ybajwa@sandersbajwa.com
Lad Z. Stricker
lstricker@sandersbajwa.com
SANDERS BAJWA LLP
919 Congress Avenue, Suite 1305
Austin, Texas 78701
Tel: (512) 535-5220 | Fax: (512) 270-5111

**ATTORNEYS FOR DEFENDANT
ALEXANDER LE ROUX**

**Via E-Service**
Ryan A. Botkin
ryan@wittliffcutter.com
Joshua A. Kelly
joshua@wittliffcutter.com
WITTLIFF CUTTER, PLLC
1209 Nueces Street
Austin, Texas 78701
Tel: 512-960-4730 | Fax: 512-960-4869

**ATTORNEYS FOR DEFENDANTS
JASON BALLARD, EVAN LOOMIS,
and ICON TECHNOLOGY, INC.**

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Sean Hamada on behalf of Sean Hamada
Bar No. 24014448
sean@hamadasmith.com
Envelope ID: 70804887
Status as of 12/12/2022 4:32 PM CST

Associated Case Party: DRAGAN BOROJA

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Sean T.Hamada | | sean@hamadasmith.com | 12/7/2022 5:08:30 PM | SENT |

Associated Case Party: ALEXANDER LE ROUX

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Yusuf A.Bajwa | | ybajwa@sandersbajwa.com | 12/7/2022 5:08:30 PM | SENT |
| Ryan P.Bates | | rbates@sandersbajwa.com | 12/7/2022 5:08:30 PM | SENT |
| Lad Z.Stricker | | lstricker@sandersbajwa.com | 12/7/2022 5:08:30 PM | SENT |
| Polly Ryan | | pryan@sandersbajwa.com | 12/7/2022 5:08:30 PM | SENT |

Associated Case Party: ICON TECHNOLOGY INC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Joy Ramirez | | joy@wittliffcutter.com | 12/7/2022 5:08:30 PM | SENT |
| Tracy Engle | | tracy@wittliffcutter.com | 12/7/2022 5:08:30 PM | SENT |
| Ryan Botkin | | ryan@wittliffcutter.com | 12/7/2022 5:08:30 PM | SENT |
| Joshua  A. Kelly | | joshua@wittliffcutter.com | 12/7/2022 5:08:30 PM | SENT |