UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **DRAGAN BOROJA,** | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | No. 1-22-CV-01299-RP |
| | § | |
| **ALEXANDER LE ROUX, EVAN LOOMIS, JASON BALLARD, ICON TECHNOLOGY, INC.,** | § § § § | |
| *Defendants* | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:  THE HONORABLE ROBERT PITMAN
     UNITED STATES DISTRICT JUDGE

Before the Court is Defendants Alexander Le Roux, Evan Loomis, Jason Ballard, and ICON Technology, Inc.'s Joint Motion for Judgment on the Pleadings, Dkt. 17; Joint Motion for Summary Judgment, Dkt. 16; and all related briefing. After reviewing these filings and the relevant case law, the undersigned issues the following report and recommendation recommending that the District Court grant Defendants' Motion for Judgment on the Pleadings and dismiss as moot Defendants' Motion for Summary Judgment.

## I.  BACKGROUND

Plaintiff Dragan Boroja filed his original petition in the 419th District Court of Travis County initially naming Alexander Le Roux as the sole defendant and bringing claims for breach of fiduciary duty, conversion, fraud, and violation of the Texas Uniform Trade Secret Act. Dkt. 1-1, at 1, 10-14. He then filed a Second

1

Amended Petition adding the ICON Defendants (Evan Loomis, Jason Ballard, and ICON Technology). Dkt.1-1, at 300. Boroja filed his Third Amended Petition, adding claims under RICO 18 U.S.C. § 1961, et seq. Dkt. 4, at 31. Specifically, Boroja filed claims against Le Roux and the ICON Defendants under 18 U.S.C. § 1962(a), and against Defendants Evan Loomis, Jason Ballard, and Le Roux under 18 U.S.C. §§ 1962(c), (d). *Id.* at 31-35. The ICON Defendants and Le Roux then removed the case pursuant to federal question jurisdiction under 28 U.S.C. § 1441(a), because Boroja's suit involves a federal question under RICO 18 U.S.C. § 1961, et seq. Dkt. 1, at 2.

Boroja's Third Amended Petition alleges that in 2016, Boroja, a builder and member of an architecture firm, invested $8,000 in Le Roux's nascent company, ALR Technologies, in exchange for a 20% ownership interest. Dkt. 4, at 3-4. Boroja contributed to the continuing development of the Vesta, a 3D concrete printer designed by Le Roux and owned by ALR. *Id.*

In 2017, Le Roux met Loomis and Ballard, owners of an eco-building supply business named Treehouse. *Id.* At first, the supposed purpose of Le Roux's contact with Loomis and Ballard was to discuss Treehouse's potential investment in ALR and a potential collaboration between the two companies related to 3D house printing technology. *Id.* Boroja claims that instead of setting up a collaboration between ALR and Treehouse, "Le Roux, with the help of Loomis and Ballard, conceived of and enacted a scheme to transfer ALR's Valuable Assets to another company that Loomis and Ballard owned called ICON, and claim the opportunity for himself rather than

2

share it with Boroja through their mutual interest in ALR." *Id.* at 3. ALR's Valuable Assets include "intellectual property rights, designs, etc." that Boroja alleges Loomis was initially interested in buying outright. *Id.* at 4. Boroja states: "Le Roux never offered to buy out Boroja or even give him an opportunity to join the collaboration, which was Boroja's right as partial owner of ALR's Valuable Assets." *Id.*

While Boroja joined one of the initial discussions with Loomis and Ballard, Le Roux subsequently met Loomis and Ballard without him, and from that point forward wore two hats in order to execute his alleged scheme. *Id.* at 7-8. On the one hand, Le Roux variously represented to Boroja that Loomis and Ballard were interested in buying Boroja out of the company but "balked" at his valuation of his interest; that Le Roux might sell company assets to Treehouse to generate needed income; or, alternatively, that he might close down ALR altogether for lack of capital. *Id.* at 8-14. Le Roux eventually told Boroja that Treehouse was not interested in a collaboration with ALR and that he wanted to close down ALR, perhaps take an engineering job, and discontinue his efforts to work on a 3D concrete printer. *Id.* at 14. To that end, Le Roux sent Boroja ALR's final tax return showing a net loss of $6,808.00 and representing that ALR had no value or assets *Id.* at 18. Le Roux then filed a Certificate of Termination for ALR with the Texas Secretary of State. *Id. at* 18-19.

On the other hand, Boroja alleges, while Le Roux purported to abandon the 3D concrete printing business, he was scheming with Loomis and Ballard to transfer ALR Valuable Assets to a company Loomis registered known as ICON. *Id.* at 7. According to Boroja, the end game was for ICON to use ALR's assets "to develop a 3D

concrete printer to build residential, industrial, and commercial structures—the exact same business model that ALR was engaged in." *Id.* at 7. While Le Roux was telling Boroja that there was potential interest in collaboration, or in buying his interest in ALR, and later, that he planned to wind down ALR and pursue other opportunities, he was, in fact, developing and promoting ALR's Vesta printer, helping Loomis and Ballard develop their Vulcan printer, and holding himself out as a co-founder of ICON. *Id.* at 8-10. Boroja alleges that Le Roux's parallel and conflicting activities amounted to Le Roux "[jumping] to a competing entity … [taking] ALR's Valuable Assets with him." *Id.* at 15.

In 2017, after Le Roux filed the Certificate of Termination and told Boroja he planned to move on to other projects, Boroja moved on as well. *Id.* at 19. He claims that it was not until 2021 when he searched his own company (to whom ALR had licensed the Vesta printer at one point), that he "discover[ed] that Le Roux had falsely represented that he was leaving the 3D concrete printing business [and] instead gone on to partner with Loomis and Ballard in ICON to develop a printer that appeared to have many similarities to the Vesta." *Id.* at 20. Through discovery, Boroja claims it has become apparent that the ICON Defendants "began working together to fraudulently acquire ALR's Valuable Assets long before Boroja was told ALR was struggling and may be shut down." *Id.* at 20-21. Boroja states that he is bringing his action now so that Le Roux "and those acting in concert with him … properly compensate him for his portion of ALR's assets that were fraudulently, transferred, stolen, and/or misappropriated by Le Roux and his co-conspirators." *Id.* at 19.

For Defendants' alleged fraudulent activity, theft, and/or misappropriation, Boroja brings six causes of action for: (1) violation of the Texas Uniform Fraudulent Transfer Act; (2) fraud; (3) conspiracy; (4) violation of RICO, 18 U.S.C. § 1962(a); (5) violation of RICO, 18 U.S.C. U.S.C. 1962(c); and (6) violation of RICO, 18 U.S.C. 1962(d). *Id.* at 24-36. Defendants move for summary judgment on causes of action 1-3 on the basis that the limitations period has run because Boroja's claims accrued in 2017. Dkt. 16, at 8. Defendants also move for judgment on the pleadings as to Boroja's RICO claims, arguing that Boroja cannot allege a pattern of racketeering activity, cannot demonstrate his injuries were caused by Defendants' alleged RICO violations, and does not allege a separate RICO violation for his conspiracy claim. Dkt. 17, at 7.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475

U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

**B.     Judgment on the Pleadings**

Under Rule 12(c), a party may move for judgment on the pleadings "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Motions pursuant to Rule 12(c) are analyzed under the same standard as a Rule

12(b)(6) motion to dismiss for failure to state a claim. *Phillips v. City of Dallas*, 781 F.3d 772, 775 (5th Cir. 2015).

To avoid dismissal for failure to state a claim pursuant to Rule 12(b)(6), a plaintiff must plead enough facts to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court determines whether the plaintiff has stated both a legally cognizable and plausible claim; the court should not evaluate the plaintiff's likelihood of success. *Lone Star Fund V. (U.S.), LP v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

Based upon the assumption that all the allegations in the complaint are true, the factual allegations must be enough to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555. A court, however, need not blindly accept each and every allegation of fact; properly pleaded allegations of fact amount to more than just conclusory allegations or legal conclusions masquerading as factual conclusions. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002); *see Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). When the plaintiff pleads factual content that allows the court to reasonably infer that the defendant is liable for the alleged misconduct, then the claim is plausible on its face. *Iqbal*, 556 U.S. at 678. The plausibility standard, unlike the "probability requirement," requires more than a sheer possibility that a defendant acted unlawfully. *Id*. A pleading offering

"labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555.

Further, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Ironshore Europe DAC v. Schiff Hardin, LLP*, 912 F.3d 759, 763 (5th Cir. 2019). The Court may also consider matters of public record, *Davis v. Bayless*, 70 F.3d 367, 372 n.3 (5th Cir. 1995), and any other matters of which it may take judicial notice. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011).

### III.  DISCUSSION

The Court has discretion to dispose of jurisdictional questions in a manner that promotes judicial economy. *See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 586-87 (1999) (upholding district court's decision to dispose of personal jurisdiction first); *Pervasive Software Inc. v. Lexware GmbH & Co.*, 688 F.3d 214, 232 (5th Cir. 2012) (same). In this case, the Court's jurisdiction over Boroja's state law claims arises pursuant to 28 U.S.C § 1367 governing supplemental jurisdiction. The undersigned will address Defendants' motion for judgment on the pleadings as to Boroja's RICO claims first because, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Therefore, if Defendants prevail on their motion for judgment on the pleadings as to Boroja's RICO claims, the Court has the

option to decline the exercise of jurisdiction over the state law claims that remain. In this case, resolution of Defendants' Motion for Judgment on the Pleadings before reaching the merits of Defendants' Motion for Summary Judgment leads to a more efficient result without offending principles of federalism.

### A. Motion for Judgment on the Pleadings

Boroja's Third Amended Complaint asserts three types of claims under RICO 18 U.S.C. § 1962: (1) violation of § 1962(a), governing use and investment of income derived from a pattern of racketeering in an enterprise; (2) violation of §1962(c), governing conduct of and participation in an enterprise; and (3) violation of § 1962(d), governing conspiracy to violate subsections (a), (b), or (c) of § 1962. Dkt. 4, at 31-36. Common elements are present in all three subsections. *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 742 (5th Cir. 1989). The common elements of a RICO claim under § 1962, are: "(1) a person who engages in (2) a pattern of racketeering activity (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003); *see also* 18 U.S.C. § 1962(a) (requiring "income derived, directly or indirectly, from a pattern of racketeering activity"); 18 U.S.C. § 1962(c) (prohibiting "conduct of such enterprise's affairs through a pattern of racketeering activity").

Defendants argue that Boroja does not adequately allege the "pattern of racketeering" element essential to each of his claims, rather, his pleadings describe a "short-lived cover up of a single, isolated wrong allegedly done to a single victim." Dkt. 17, at 7. Further, for the purposes of Boroja's 1962(a) claim, Defendants state

9

that the "the racketeering acts Boroja alleges … [did not] generate any 'income' that was invested into an enterprise that ultimately caused his injury. *Id.* As to Boroja's § 1962(c) claim, Defendants argue that the "racketeering acts Boroja alleges were [not] the source of his supposed injury." *Id.* Finally, as to Boroja's conspiracy claim under of § 1962(d), Defendants argue that Boroja "does not allege any contemplated RICO violation other than the one asserted in his other claims." *Id.* Defendants contend that all three of Boroja's RICO claims fail as a matter of law. *Id.*

    1.    Pattern of Racketeering Activity

In the Fifth Circuit, a pattern of racketeering activity has two elements: "1) predicate acts—the requisite racketeering activity, and 2) a pattern of such acts." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993). A "pattern of such acts" requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co. v. Williamson,* 224 F.3d 425, 441 (5th Cir. 2000).

Boroja's Third Amended Petition alleges that Defendants engaged in a "pattern of racketeering" when they:

> used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise between February 2017 and the present. Specifically … Defendants obtained and continue to use ALR's Valuable Assets through a pattern of phone and internet communications to (1) misrepresent to Boroja that they were negotiating a potential merger or collaboration between ALR and Loomis and Ballard; (2) misrepresent to Boroja that his price for the buyout of his ALR interest had made it prohibitive for Loomis, Ballard, and/or ICON to continue negotiating with Le Roux, when in fact they had already secretly struck a deal and joined forces with Le Roux; (3) conceal the transfer of ALR's Valuable Assets to ICON or the ICON Association; (4) conceal the fact that Le Roux was working with ICON as a co-founder

and using the Vesta Printer technology to help ICON or the ICON Association design and develop the Vulcan Printer; (5) prepare and transmit ALR's final tax return with no disclosure of the transfer or sale of ALR's Valuable Assets; (6) represent to Boroja that ALR's assets were depleted or valueless upon dissolution in order to conceal the fraudulent transfer; and (7) apply for and obtain United States patents using the fraudulently acquired assets and technology. These activities … are a pattern of racketeering activity….

Dkt. 4, at 32.

### a. Scope of the alleged "pattern of racketeering"

As a preliminary matter the parties disagree about the scope of the alleged pattern of racketeering activity. Defendants state that "[t]he core of the alleged RICO scheme consists of six wire communications during a closed period beginning on February 17, 2017 and ending six months later on August 15, 2017." Dkt. 17, at 8. These wire communications primarily consist of emails and texts sent to Boroja from Le Roux, messages sent among the ICON Defendants and Le Roux, and from the Defendants to suppliers. Dkt. 4, at 32.

Boroja disagrees. His response to Defendants' Motion for Judgment on the Pleadings argues that these communications, "in furtherance of [Defendants'] efforts to defraud Mr. Boroja" of his share of the ALR Valuable Assets are only part of the alleged pattern of racketeering. Dkt. 30, at 13. He claims that subsequent, "extensive communications [between 2017 and 2023] with potential investors, business partners and customers, to secure funding, materials/designs, or revenue using the misappropriated ALR Valuable Assets" are separate acts of misappropriation of ALR's Valuable Assets and are part of the alleged pattern of racketeering. *Id.*

11

Defendants reply that this is the "first time" Boroja has claimed that actions taken in furtherance of the "ongoing use of alleged ALR technology by defendants [in the routine course of operating their business] amount to repeated misappropriations of ALR trade secrets" and are part of the alleged pattern of racketeering. Dkt. 37, at 3. Further, Defendants argue that "misappropriation of a trade secret by using that trade secret is categorically excluded from the list of possible RICO predicate acts." *Id.* at 5.

As stated above, the Court's review at this stage is " limited to the complaint, any documents attached to the complaint, and any documents attached to [Defendants' motion] that are central to the claim and referenced by the complaint." *Ironshore*, 912 F.3d at 763. Nowhere in Boroja's complaint does he claim that communications to partners, customers, and vendors after the wrongful acquisition of ALR Valuable Assets, "using the misappropriated ALR Valuable Assets" are discrete acts of misappropriation in the alleged pattern of racketeering. Dkt. 30, at 13. Instead, each time he alleges a pattern of racketeering, he references only Defendants' actions related to the wrongful transfer of ALR's Valuable Assets from ALR to ICON, and Defendants' application for patents. *See* Dkt. 4, at 32; 34; 35.[1] The

---

[1] *See, e.g.*, Dkt. 4, at 32 ("Specifically, the Count 4 Defendants obtained and continue to use ALR's Valuable Assets through a pattern of phone and internet communications to (1) misrepresent to Boroja that they were negotiating a potential merger or collaboration between ALR and Loomis and Ballard; (2) misrepresent to Boroja that his price for the buyout of his ALR interest had made it prohibitive for Loomis, Ballard, and/or ICON to continue negotiating with Le Roux, when in fact they had already secretly struck a deal and joined forces with Le Roux; (3) conceal the transfer of ALR's Valuable Assets to ICON or the ICON Association; (4) conceal the fact that Le Roux was working with ICON as a co-founder and using the Vesta Printer technology to help ICON or the ICON Association design and develop the Vulcan Printer; (5) prepare and transmit ALR's final tax return with no disclosure of the

natural reading of Boroja's petition is that the scope of the pattern of racketeering he alleges is limited to Defendants' efforts to fraudulently transfer and/or acquire Boroja's interest in ALR's Valuable Assets and Defendants' patent applications.

Even if Boroja had pleaded "extensive communications with potential investors, business partners and customers, to secure funding, materials / designs, or revenue using the misappropriated ALR Valuable Assets" from 2017-2023, after the alleged fraudulent transfer of his share of ALR valuable assets, his complaint does not allege the existence of facts to support that claim. Dkt. 30, at 13. For the purpose of Defendants' Motion for Judgment on the Pleadings, the undersigned will examine the sufficiency of the pattern of racketeering as alleged by Boroja in his Third Amended Petition.

### b.  Predicate Acts

The predicate acts alleged by Boroja are acts of wire fraud. Dkt. 4, at 32. Defendants agree that "the core of the alleged RICO scheme consists of … wire communications … allegedly [serving] to conceal the purported transfer of ALR technology to ICON." Dkt. 17, at 8.

Predicate acts of racketeering are defined to include wire fraud. 18 U.S.C. § 1961(1)(B). "[Wire] fraud occurs whenever a person, 'having devised or intending to devise any scheme or artifice to defraud,' uses the [wires] 'for the purpose of executing

---

transfer or sale of ALR's Valuable Assets; (6) represent to Boroja that ALR's assets were depleted or valueless upon dissolution in order to conceal the fraudulent transfer; and (7) apply for and obtain United States patents using the fraudulently acquired assets and technology. These activities constitute violations of 18 U.S.C. § 1343 and are a pattern of racketeering activity in within 18 U.S.C. §1961(5).").

13

such scheme or artifice or attempting so to do.'" *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 648 (2008) (quoting 18 U.S.C. § 1341). The undersigned finds that Boroja has adequately alleged predicate acts of racketeering for the purposes of the alleged pattern of racketeering.

### c. Relatedness

The element of relatedness is established if the predicate acts have the "same or similar purposes, results, participants, victims, or methods of commission." *H.J. Inc. v. Nw. Bell Tel., Co.*, 492 U.S. 229, 240 (1989).

Defendants argue that their actions in applying for patents are insufficiently related to the other acts alleged in the pattern of racketeering because they don't share the same purpose. Dkt. 17, at 10. Defendants argue that the purpose of patent applications is to provide "detailed disclosures, which places them squarely at cross purposes with any actions to conceal ICON's alleged use of the technologies described in the applications." *Id.* Further, Defendants argue that Boroja fails to allege that the patent applications were part of the scheme to fraudulently acquire ALR technology and at most, amount to a "later use of the alleged spoils of a fraudulent scheme which cannot be the basis of a wire fraud indictment and therefore cannot be a RICO predicate." *Id.* at 11.

Turning back to Boroja's Third Amended Petition, the crux of Boroja's RICO claims is that Defendants obtained ALR's assets through a pattern of phone and internet communications in violation of 18 U.S.C. § 1343 governing wire fraud. Dkt. 4, at 32. Among the activities and purposes furthered by these phone and internet

communications is Defendants' actions in "[applying] for and [obtaining] United States patents." *Id.* Boroja alleges that in applying for patents, Defendants made public ALR Valuable Assets in which he held a 20% interest, and permanently deprived him of the ability to benefit from and capitalize on those assets. *Id.* at 33.

The undersigned finds that the acts of applying for and obtaining patents using ALR Valuable Assets are not related to the other predicate acts alleged by Boroja. As mentioned above, the seven acts listed by Boroja, with the exception of the patent applications, correspond to emails and text messages spanning a seven-month period during which Defendants allegedly worked together to transfer ALR Valuable Assets from ALR to ICON. Dkt. 4, at 4-19. These communications, therefore, primarily had the purpose and effect of transferring ALR's Valuable Assets to ICON. Even in Boroja's telling, the patent applications had a wholly different purpose and effect. Boroja's petition states that that the public disclosure of ALR Valuable assets by and through the patent applications deprived him of his ability to capitalize and benefit from ALR Valuable Assets. Dkt. 4, at 3. He does not allege that the patent applications had the purpose and effect of transferring ALR's Valuable Assets to ICON.

Boroja has not adequately pleaded that Defendants' activities related to applying for and obtaining patents using ALR Valuable Assets are related to the acts of mail and wire fraud underlying the alleged transfer of ALR's Valuable Assets to ICON. *Compare* Burzynski, 989 F.2d at 742-43 (finding plaintiff adequately pleaded

15

relatedness of predicate acts where the acts "[shared] the common purpose of avoiding paying BRI's just insurance claims and putting [plaintiff] out of business.")

The remaining related predicate acts in the alleged pattern of racketeering are the communications between Boroja and Le Roux, amongst Defendants, and from ICON to its suppliers detailed in Boroja's complaint that shared the common purpose of transferring Boroja's share of the ALR Valuable Assets to ICON.

### d. Continuity

While Boroja has alleged a series of related predicate acts, he has not sufficiently pleaded the second prong of the "pattern of activity" requirement—continuity. Boroja must plead that the related predicate acts amount to or pose a threat of continued criminal activity. *St. Paul Mercury Ins. Co.*, 224 F.3d at 441. This may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that "by its nature projects into the future with a threat of repetition." *H.J. Inc.*, 492 U.S. at 241. A closed period of conduct may be demonstrated "by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. An open period of conduct involves the establishment of "a threat of continued racketeering activity." *Id.* This may be shown where there exists a "specific threat of repetition extending indefinitely into the future," or "where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business." *Id.* at 242-43. In enacting RICO, Congress was concerned with "long-term criminal conduct." *Id.* at 242.

Here, all the qualifying predicate acts took place during the course of Defendants' transfer of ALR's Valuable Assets to ICON over the seven-month period spanning February 2017 through August 2017. According to the petition, the transfer of ALR's Valuable Assets was complete when Le Roux filed a tax return demonstrating that ALR's "assets were depleted or valueless" and filed a Certificate of Termination of ALR without Boroja's consent. Dkt. 4, at 18.[2] Where the alleged criminal scheme has reached fruition and is not alleged to extend indefinitely into the future, Boroja must show that the predicate acts, though within a closed period of conduct, extended over a substantial period of time. *H.J. Inc.*, 492 U.S. at 241-42. A few weeks or months with no threat of future criminal conduct does not qualify as a substantial period of time for the sake of the continuity requirement. *Id.* at 242.[3]

The undersigned finds that Boroja does not adequately establish the continuity requirement and, therefore, has failed to properly plead a pattern of racketeering necessary for each of his RICO claims. Based on the foregoing, the undersigned

---

[2] *See* Dkt. 4, at 18 (stating "'The Plan' that Defendants had crafted in February 2017 was nearly accomplished; all that was left was to ensure that Boroja had no reason or incentive to investigate the fraudulent transfer of ALR's Valuable Assets. On August 23, 2017, Le Roux filed a Certificate of Termination for ALR without Boroja's consent.").

[3] *See also Bonton v. Archer Chrysler Plymouth, Inc.*, 889 F. Supp. 995, 1003-04 (S.D. Tex. 1995) (finding no continuity and no claim of threat of continued criminal activity where defendant's acts, which deprived plaintiff of a property interest were completed and could not be repeated because plaintiff's property had already been converted); *Burzynski*, 989 F.2d 733, 743-44 (5th Cir. 1993) (finding conduct did not constitute or threaten long-term criminal activity where multiple RICO predicate acts of fraud "were part and parcel of a single, discrete, and otherwise lawful commercial transaction"); *Calcasieu Marine Nat'l Bank v. Grant,* 943 F.2d 1453, 1464 (5th Cir. 1991) (finding no continuity where plaintiff alleged defendant deprived her of community property interest in a partnership, and alleged RICO predicates during a closed period of conduct with no threat of continued criminal acts, and the deprivation of her property interest was completed, without threat of repetition).

recommends that the District Court grant Defendants' Motion for Judgment on the Pleadings as to Boroja's claims arising pursuant to RICO 18 U.S.C. § 1962.

### B.     Motion for Summary Judgment

Although Plaintiffs' RICO claims were capable of providing for federal-question jurisdiction, and indeed, the case was removed from state court pursuant to federal question jurisdiction, the undersigned has recommended Defendants be granted judgment on the pleadings as to these claims. Dkt. 1, at 2. There are no other claims remaining that sustain federal question jurisdiction. The general rule in the Fifth Circuit is to decline to exercise jurisdiction over supplemental state law claims when the federal claims are dismissed before trial. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992) ("Our general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed.") (citing *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989)).

Therefore, the undersigned recommends that the District Court exercise its discretion under 28 U.S.C. § 1367(c)(3) and decline to exercise jurisdiction over the state-law claims that remain.

### IV.     RECOMMENDATION

In accordance with the foregoing discussion, the undersigned **RECOMMENDS** that the District Court grant Defendants' Motion for Judgment on the Pleadings, Dkt. 17, and grant Defendants judgment as a matter of law as to Boroja's claims under RICO § 1962. **IT IS FURTHER RECOMMENDED** that the District Court decline an exercise of supplemental jurisdiction over Plaintiff's

remaining state-law claims. Therefore, the District Court should **DISMISS AS MOOT** Defendants' Motion for Summary Judgment, Dkt. 16, as to Boroja's state law claims.

## V.   WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED June 15, 2023.

_____
DUSTIN M. HOWELL
UNITED STATES MAGISTRATE JUDGE